THE PEOPLE OF THE STATE OF NEW YORK, Appellant, *v.* JOHN S. BIESECKER, Respondent.

*Police power — extent thereof — the Agricultural Law prohibiting the use of a "preservative" in butter is unconstitutional.*

The police power of the State may not only be used to protect the public health, but to prevent a fraud upon the people of the State; statutes passed for that purpose must, however, either in their title or in the body thereof, indicate the purpose sought to be accomplished.

Section 27 of the Agricultural Law (Laws of 1893, chap. 338, as amd. by Laws of 1900, chap. 534) providing, "No person shall sell, offer or expose for sale, any butter or other dairy products containing a preservative, but this shall not be construed to prohibit the use of salt in butter or cheese, or spirituous liquors in club or other fancy cheese, or sugar in condensed milk," which does not indicate either in the title or body thereof that its purpose is to protect the health of the people or to prevent a fraud being practiced upon them, is unconstitutional.

APPEAL by the plaintiff, The People of the State of New York, from a final judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 11th day of December, 1900, upon the decision of the court rendered after a trial at the New York Special Term sustaining a demurrer to the complaint.

*Ellis L. Aldrich,* for the appellant.

*Herbert R. Limburger,* for the respondent.

McLaughlin, J.:

This action was brought to recover a statutory penalty on the ground that the defendant had violated section 27 of the Agricultural Law,* as amended by chapter 534 of the Laws of 1900, by selling a substance called "Preservaline," with the intent that the purchaser should mix it with butter made from milk or cream and then sell the same.

The specific allegation of the complaint as to the sale is "That * * * on the 27th day of June, 1900, at his store No. 59 Murray Street, borough of Manhattan, city of New York, the defendant, * * * did sell a substance, preparation or matter called Preservaline, which was declared by him to be, * * * a preservative of butter or other dairy products; that said substance, preparation or matter called Preservaline is a preservative and is not salt to be put into butter or cheese, and is not spirituous liquors to be put into club or other fancy cheese, and is not sugar to be put into condensed milk; that the defendant, * * * did sell the said substance, preparation or matter with the intent and recommendation that the purchaser should manufacture it, mix or compound it with, or add to it natural milk or cream and other dairy products and then sell the said dairy products containing the said preservative." That such sale was in violation of, and contrary to, the section of the law above referred to, and by reason thereof the plaintiff was entitled to recover the penalty provided in section 37 of the same law, as amended by chapter 435 of the Laws of 1899. Judgment was demanded for the sum of $100 with interest from the date of the commencement of the action.

The defendant demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of action. The demurrer was sustained, and from the judgment entered the plaintiff has appealed. By demurring, the defendant, of course, admits the truth of the material allegations of the complaint, but he does not admit the legal conclusions to be drawn from such facts or the conclusions of law pleaded. The real question presented, therefore, is whether section 27 of the Agricultural Law, as amended by the act of 1900, is constitutional. So much of this section as is involved in the subject-matter of the litigation reads as follows: "No person

* Laws of 1893, chap. 338.— [REP.

shall sell, offer or expose for sale, any butter or other dairy products containing a preservative, but this shall not be construed to prohibit the use of salt in butter or cheese, or spirituous liquors in club or other fancy cheese or sugar in condensed milk. No person or persons, firm, association or corporation shall induce or attempt to induce any person or persons to violate any of the provisions of the Agricultural Law. Any person, firm, association or corporation selling, offering or advertising for sale any substance, preparation or matter for use in violation of the provisions of the Agricultural Law shall be guilty of a violation of this act." The act further provides (§ 37, as amd. by chap. 435, Laws of 1899) that any person violating the provisions of the section quoted incurs a penalty not exceeding $100.

There is no doubt that the police power of the State may not only be used to protect the public health, but to prevent a fraud upon the people of the State, and that necessary statutes may be passed for that purpose; but when such statutes are passed they must either, in their title or in the body of the act, indicate the purpose sought to be accomplished. (*People* v. *Girard*, 145 N. Y. 105.) The rights of property cannot be invaded, interfered with or destroyed under the pretense of a police regulation for either of the purposes mentioned, unless it appears from the statute itself that that is *the* purpose of it. (*Matter of Jacobs*, 98 N. Y. 109; *People* v. *Gillson*, 109 id. 390.) And it is not within the power of the Legislature, under the pretense of exercising the police power of the State, to enact laws not necessary to the preservation of the health and safety of the community, or to prevent fraud upon the people, and which will destroy property or be oppressive and burdensome to the citizens of the State. Personal liberty cannot be interfered with any more than the property of the citizen can be destroyed in this way. In the exercise of this power it has been held that the Legislature, to prevent fraud and deception, has the right to prohibit the sale of a substance colored in such a way as to resemble butter made from milk and cream (Laws of 1885, chap. 183; *People* v. *Arensberg*, 105 N. Y. 123; *People* v. *West*, 106 id. 293), and to protect the public health this milk shall not be sold below a certain standard (*People* v. *Cipperly*, 37 Hun, 324; S. C., 101 N. Y.

634), and that vinegar shall not be sold which contains any artificial coloring matter. (*People* v. *Girard, supra.*)

But can the statute here under consideration be said to have been passed to prevent either one of the objects named? The act itself does not indicate any such purpose, and there is nothing in the complaint from which even an inference to that effect can be drawn. It will be observed that it is not alleged that "Preservaline" is injurious to the public health, or that its use, when mixed with butter, milk or cheese, changes their appearance in any way, or that by such use any one will be deceived. The name itself would seem to indicate, and it must be considered in its ordinary sense, that it is not injurious to the public health. The word "preservative," as defined in the Century Dictionary, is, "That which preserves; anything which tends to keep safe and sound or free from injury, corruption or decay; a preventive of damage, decomposition or waste." And in the Standard Dictionary, "That which serves or tends to preserve; that which has power to keep safe or sound; a safeguard." And in Webster's Unabridged Dictionary, "That which preserves or has the power of preserving; that which tends to secure from injury, destruction, decay or corruption; a preventive of injury or decay." And in Webster's International Dictionary, "That which preserves or has the power of preserving; a preservative agent."

In *People* v. *Marx* (99 N. Y. 377) the court, in holding that a statute passed to prohibit the sale of oleomargarine was unconstitutional, said: "It appears to us quite clear that the object and effect of the enactment under consideration were not to supplement the existing provisions against fraud and deception by means of imitations of dairy butter, but to take a further and bolder step and by absolutely prohibiting the manufacture or sale of any article which could be used as a substitute for it, however openly and fairly the character of the substitute might be avowed and published, to drive the substituted article from the market and protect those engaged in the manufacture of dairy products against the competition of cheaper substances capable of being applied to the same uses, as articles of food." What was said in that case is applicable to the statute now under consideration. Without a suggestion, so far as the statute itself is concerned, either in the title or in the body of the act that its purpose is to protect the health of the people or to prevent fraud

being practiced upon them, it seeks to prohibit the use of a substance — no matter how valuable it may be, or the extent of its utility — and this we do not believe that the Legislature has the power to do. If it could, then it could prohibit the use of any preservative in butter, milk or cheese. It is thought by not a few people that salt not only preserves, but actually adds to the quality of butter, and it may not be entirely optimistic to assert that, with our increased knowledge, another substance may yet be discovered which will preserve and add to the quality of butter even to a greater extent than salt does, and if such substance should be discovered, and it were not prejudicial to the public health, no one would seriously contend that the Legislature could prohibit its sale or use.

For these reasons we are of the opinion that the trial court was right in holding that the statute referred to is unconstitutional, and for that reason the judgment must be affirmed, with costs.

VAN BRUNT, P. J., O'BRIEN, INGRAHAM and HATCH, JJ., concurred.

Judgment affirmed, with costs.